453 S.E.2d 380

Patricia L. SELLITTI, Plaintiff
Below, Appellant,

v.

Patsy SELLITTI, Defendant
Below, Appellee.

No. 22094.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 14, 1994.

Decided Dec. 19, 1994.

547

William J. Leon, Gianola, Leon & Barnum, Morgantown, for appellant.

Mark A. Colantonio, Frankovitch & Anetakis, Weirton, for appellee.

PER CURIAM:

The appellant in this divorce proceeding, Patricia L. Sellitti, claims that the Circuit Court of Hancock County erred in distribut-

ing marital property and in otherwise adjusting the financial relationships existing between herself and the appellee, her former husband, Patsy Sellitti. After reviewing the questions raised and the facts presented, this Court believes that certain of the appellant's claims are meritorious and that others are not. The judgment of the Circuit Court of Hancock County is, therefore, reversed in part and affirmed in part.

The parties in this case, Patricia L. Sellitti and Patsy Sellitti, Sr., were married in 1955 and thereafter resided in Weirton, Hancock County, West Virginia. During their marriage, they were self-employed and acquired substantial assets, including the Town House Motel in Weirton and a number of apartment buildings.

On August 10, 1989, the appellant sued her husband for divorce. Evidentiary hearings were conducted in the matter before a family law master on July 26, 1991, and on October 2, 1991. The family law master issued a recommended decision in the case concerning the equitable distribution of the parties' marital assets on February 18, 1992, and after various hearings the Circuit Court of Hancock County, on May 28, 1993, entered a very complicated final order granting the parties a divorce, making marital distribution of the parties' assets, and otherwise adjusting the parties' affairs.

In the present proceeding, the appellant challenges six aspects of the final order:

1. She claims that the circuit court erred in charging her with one-half of a sum of money which appellee, without her consent, voluntarily undertook to pay to the parties' emancipated son and his wife;

2. She claims that the circuit court erred by declaring that the *pendente lite* alimony award which she received during the prosecution of the divorce should constitute a set-off against her share of the marital assets;

3. She claims that the circuit court erred in allowing appellee to introduce a revised survey of the parties' apartment properties and in basing the allocation of the property on the revised plat;

4. She claims that the circuit court erred in refusing to award her alimony;

5. She claims that the circuit court allowed the appellee credit for unreasonable expenses in allocating portions of the parties' accrued business income; and

6. She claims that the circuit court erred in refusing to require the appellee to pay her attorney fees and costs incurred in the prosecution of the divorce proceeding.

The appellant's first claim is that the circuit court erred in charging her with half of a sum of money which appellee voluntarily undertook to pay to the parties' adult son and his wife.

It appears that in January, 1981, the parties sold their son and daughter-in-law one-half of a duplex for $40,000.00. Apparently, the parties financed this transaction. After paying approximately $15,000.00 on the transaction, the son and daughter-in-law decided to leave town. It appears that at this time the appellee, without the consent or concurrence of the appellant, agreed to reimburse the $15,000.00 which the son and daughter-in-law had paid.

In the subsequent divorce proceeding, the appellee requested that the court charge the appellant with $7,500.00, or one-half, of the amount which he had agreed to repay to the son and daughter-in-law. The court found this to be reasonable and stated:

The Court finds that it is fair, equitable and just that the Plaintiff share in the obligation of repayment to Patsy Kent Sellitti and Pamela Sellitti, the son and daughter-in-law of the parties. The Defendant is surely entitled to be reimbursed one half (½) of the amount he has heretofore paid and agreed to repay the son and the daughter-in-law.

■ Although this Court has recognized, generally, that "[i]n computing the value of any net asset [in a divorce proceeding], the indebtedness owed against such asset should ordinarily be deducted from its fair market value," in *Downey v. Kamka*, 189 W.Va. 141, 428 S.E.2d 769 (1993), the Court has also indicated that it was inappropriate for a court, in making a division of marital property, to charge debts incurred by one party to

the marriage, outside of the marriage, to the other party.

In the present case, it appears that the debt in question was a debt incurred separately by the appellee apparently without the appellant's permission. Although the beneficiary of the debt was the appellant's adult son, the debt cannot appropriately be considered a marital debt, since it was apparently not incurred jointly by the parties and since it was not incurred for any apparent marital purpose. Nor can the debt appropriately be characterized as a debt assumed by the appellant.

In view of all this, and in line with the reasoning in *Downey v. Kamka, supra,* this Court believes that the trial court did not properly charge the debt to the appellant and, consequently, the trial court's order on this point must be reversed.

The appellant's next claim involves the circuit court's ruling on *pendente lite* alimony which the appellee had been ordered to pay during the pendency of the divorce.

In the final order in this case, the circuit court, in effect, found that *pendente lite* alimony, which the appellee had previously been ordered to pay, was a factor which could be considered in making, and which could support an unequal, division of the parties' marital assets.

West Virginia Code, 48–2–13, indicates that the purpose of temporary or *pendente lite* alimony is to provide for the maintenance of the recipient party during the pendency of the divorce proceedings. *See Blackshere v. Blackshere,* 111 W.Va. 213, 161 S.E. 27 (1931). There is nothing in that statute which authorizes a trial court to make an unequal distribution of marital assets because one party had been ordered to pay the other temporary alimony. Moreover, W.Va. Code, 48–2–32(c), the portion of the marital distribution statute which governs the distribution of assets in cases such as the present one, does not state that temporary alimony payments can be offset against marital assets.

In *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988), the Court

indicated that when a trial court made any division of marital property other than an equal division, the court was required to make its unequal division on the specific basis of one of the factors enumerated in W.Va.Code, 48–2–32(c). In syllabus point 1 of *Somerville,* the Court stated:

In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code § 48–2–32(c) (1986).

It appears that in the present case, the trial court erred in failing to follow the mandate in syllabus point 1 of *Somerville v. Somerville, supra,* in considering *pendente lite* alimony payments to reduce the distribution of the appellant's share of the assets.

In the next assignment of error the appellant challenges the use of a revised plat or survey in making distribution of the parties' apartment properties.

The apartments owned by the parties were located on several adjoining parcels of land located on View Street in Weirton, West Virginia. To the north of one parcel on which was located a duplex assigned to the appellant, there were several contiguous, undeveloped tracts. Prior to the institution of the divorce proceeding, these undeveloped tracts were described on a plat or survey

filed in the office of the Clerk of the County Commission of Hancock County. The layout of the lots, as indicated on this plat or survey, was a factor considered in the assessment of the value of the parties' assets. The family law master, in recommending a division of the parties' property, recommended that the appellant receive undeveloped Lot No. 5 as it appeared on the recorded plat.

After the family law master submitted his recommended decision, and while the circuit court was considering the division of the parties' marital estate, the appellee, for the first time, advised the appellant and the court of the existence of a revised, unrecorded survey or plat of the apartment properties. This revised survey relocated the boundary lines of the lots, and in effect, reduced the property being distributed to the wife. The net effect was to give the appellant substantially less property than had been recommended by the family law master. Despite appellant's objection, the circuit court awarded the appellant property as shown on the revised plat.

In considering the propriety of the court's ruling on this point, this Court notes that W.Va.Code, 48A–4–20(d), indicates that a circuit judge, in reviewing a family law master's recommended decision, has authority take additional evidence. The statute specifically provides, in relevant part, that:

(d) In making its determinations under this section, the circuit court shall review the whole record or those parts of it cited by a party. If the circuit court finds that a master's recommended order is deficient as to matters which might be affected by evidence not considered or inadequately developed in the master's recommended order, the court may recommit the recommended order to the master, with instructions indicating the court's opinion, *or the circuit court may proceed to take such evidence without recommitting the matter.* (Emphasis added.)

■ In the past we have recognized that the decision to reopen for the taking of additional evidence is addressed to the sound discretion of the trial court and that the trial court's decision will not be disturbed unless there has been an abuse of discretion. *State*

*v. Sandler,* 175 W.Va. 572, 336 S.E.2d 535 (1985); *Jimco Supply Company, Inc. v. Neal,* 166 W.Va. 794, 277 S.E.2d 626 (1981); *Adams v. Sparacio,* 156 W.Va. 678, 196 S.E.2d 647 (1973); and *State v. Littleton,* 77 W.Va. 804, 88 S.E. 458 (1916). The rule is summarized in syllabus point 4 of *Adams v. Sparacio:*

A motion to reopen a case to permit the introduction of further evidence is addressed to the sound discretion of the trial court and the exercise of such discretion is not subject to review by an appellate court unless there has been an abuse thereof.

■ However, in *Jimco Supply Company, Inc. v. Neal, supra,* we indicated that where one party is allowed to introduce evidence after the submission of a case, and the introduction comes as a surprise to the opposing party, the surprised party should be given an opportunity to refute the new evidence.

■ Rather clearly, the valuations placed on the parties' apartments were based on the boundaries shown on the original plat. It also appears that a deed of trust against the property was based upon the descriptions of the property as contained in the original plat.

When the revised plat was proffered, the appellant objected to its introduction and took the position that if it were considered by the court, new evidence on the values of the newly bounded parcels was required to make a fair distribution, in terms of value, of the marital assets. She also objected to being charged with a percentage of the loan against the property based on the descriptions contained in the old plat, if the court decided to allocate the property on the basis of the new plat.

Despite these objections, the circuit court allocated the property on the basis of the new plat and made no adjustment in the valuations of the property to reflect the change in value of the property to changed property lines. The circuit court also failed to adjust the portion of the loan against the property chargeable against the appellant to reflect the change in boundary lines of the property.

By making an allocation of assets based upon the boundary lines shown on the new plat, the circuit court, in effect, allocated assets which had never been valued to satisfy the marital distribution requirements of the West Virginia Code. In so doing, this Court believes that the trial court erred.

■ The appellant's next claim is that the circuit court erred in denying her motion for alimony. Factually, it appears that the appellant prayed for an award of alimony, and the circuit court refused to make the award. This Court has repeatedly indicated that:

" 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus Point 2, *Lambert v. Miller,* [178] W.Va. [224], 358 S.E.2d 785 (1987).

Syl. pt. 2, *Whittaker v. Whittaker,* 180 W.Va. 57, 375 S.E.2d 421 (1988).

■ The appellant is fifty-nine years old and the appellee is fifty-eight years old. By the final distribution order, the appellant was awarded the parties' largest income-producing asset, the Town House Motel, which was valued by the appellant's attorney at $458,000.00 and which has the potential of producing a net income of $6,500.00 a month. The appellant was also awarded a duplex with a value of approximately $80,000.00, as well as all the furniture, furnishings, and appliances in the parties' marital dwelling. On the other hand, it appears that the appellee was awarded apartments encumbered by a mortgage, which, until the mortgage is paid, will net $1,500.00 per month. It also appears that the appellee received a masonry business. Because of his age and his health, it appears that the long-term value of this business is limited by the fact that the appellee's long term ability to participate in it is limited.

Although it is not absolutely clear that the circuit court considered all the factors which W.Va.Code, 48–2–16(b), requires be considered in determining alimony, this Court believes that an evaluation of the evidence in conjunction with those factors fails to demonstrate that the trial court's ruling denying the appellant substantial alimony rose to the level of an abuse of discretion.

The appellant's next claim grows out of the fact that in the final order, the circuit court adopted the family law master's recommended decision that the appellant receive one-half of the business income earned by the parties' businesses during the pendency of the divorce. In calculating the amount attributable to the appellant, the court essentially adopted figures for motel expenses as asserted by the appellee. However, in the prior hearings in the case, the appellant had taken the position that the appellee had previously understated and under-reported to taxing authorities cash income earned by the motel. When the fact that the appellee had evaded taxes was brought to the attention of the authorities, the appellee, in 1989, reported a substantially higher cash income. He also reported dramatically increased business expenses attributable to the motel. After this occurred, the appellant took issue with the dramatically increased business expenses and argued that they were exaggerated.

On appeal, the appellant claims that the trial court erred in adopting the appellee's statement of motel expenses for the year 1989 through 1991 rather than her statement of such expenses.

■ This Court has rather consistently indicated that findings of fact made by a trial court in a divorce proceeding based on conflicting evidence will not be disturbed unless they are clearly wrong or are against the preponderance of the evidence. The rule is summarized in syllabus point 1 of *Wharton v. Wharton,* 188 W.Va. 399, 424 S.E.2d 744 (1992), as follows:

" 'In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.' Syllabus Point 1, *Marcum v. Browning,* [171] W.Va. [5], 297 S.E.2d 204 [ (1982) ]...." (Citations omitted.)

The evidence on the expenses incurred by the appellee for the years in dispute is rather conflicting. The appellee's evidence indicated that the expenses were markedly higher than in the years immediately preceding 1988. An accountant for the appellant, in analyzing the expense figures for the years prior to 1988, as well as for the years 1988 and 1989, took issue with the 1988 and 1989 figures.

In assessing the overall evidence, the family law master found that there was no independent evidence to verify the figures for the years in question, but he noted that for a portion of the year 1991 verifiable expense figures were markedly higher than for the year 1988. For instance, for nine months of 1991, wages were reported as being $18,089.00, as compared for $4,680.00 for the year 1988. For nine months in 1991, repairs and maintenance were found to be $9,809.00, as compared to $1,670.00 for the year 1988. The family law master concluded that the actual figures for 1991, which were considerably closer to the figures for 1989 and 1990 than the figures for 1988, lent "credence to those figures claimed for 1989 and for 1990. It being believed that those figures were understated for the years 1986, 1987 and 1988, as a result or consequence of misstating other figures associated with the Townhouse Motel during those same years."

In addressing this same issue, the trial court in the final order in this case stated:

Numerous items of expense are listed as having been incurred by the Defendant during the period he operated the motel business. The Family Law Master found that there was no reason whatsoever to dispute the amount of expenses actually claimed by the Defendant in his Federal Tax Returns, which are part of the record in this case.

It appears to this Court that the family law master, as well as the circuit court, considered the conflicting evidence on the level of motel expenses for the years which the appellant has called into issue. Plausible reasons were adduced suggesting that the stated expenses for years prior to the challenged years were markedly lower than actual expenses for those prior years. On the other hand, it was shown that the expenses for the questioned years were consistent with actual and verifiable expenses for the subsequent period.

In view of the nature of the evidence, this Court cannot conclude that the decision of the family law master and the circuit court was clearly wrong or that the decision on expenses was against the preponderance of the evidence.

Lastly, the Court notes that at the hearing conducted on March 31, 1993, the appellant moved for an award of attorney fees and expenses. In his recommended decision, the family law master rejected the appellant's motion. The circuit court adopted this recommendation.

On appeal, the appellant claims that the circuit court erred in denying her motion for attorney and expert fees.

West Virginia Code, 48-2-13(a)(6)(A), states that "[t]he [trial] court may compel either party to pay attorney's fees and court costs reasonably necessary ... to prosecute or defend the [divorce] action in the trial court." After examining this, the Court, in syllabus point 14 of *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), stated:

The purpose of W.Va.Code, 48-2-13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees [incurred] [sic] during the course of the litigation.

In conjunction with this, this Court has recognized that a trial court has considerable discretion in its award of attorneys' fees. *Somerville v. Somerville, Id.*

The record in the present case shows that in the ultimate distribution of the parties' marital assets, the appellant received very substantial assets capable of producing meaningful income. She did receive a fund from which she potentially could pay her attorney fees and expenses. Under the circumstances, in view of the discretion given the trial court, the Court cannot conclude that the trial court erred in its ruling on this point.

For the reasons stated, the ruling of the Circuit Court of Hancock County, insofar as it relates to the debt of the appellant's son, insofar as it relates to the allocation of *pendente lite* alimony, and insofar as it relates to the use of the revised plat introduced before the circuit court is reversed. This case is remanded with directions that the circuit court absolve the appellant of all liability and charge for the debt incurred by appellee in relation to the parties' son. The court is directed to recalculate the ultimate distribution in this case so that the appellant will not be charged with the *pendente lite* alimony awarded to her. The circuit court is also directed to distribute the parties' apartments on the basis of the original plat filed with the family law master and to award the appellant one dollar per year in permanent alimony. In all other respects, the decision of the circuit court is affirmed.

Affirmed in part; reversed in part; and remanded with directions.

BROTHERTON, C.J., did not participate. MILLER, J., (Ret.) sitting by temporary assignment.