464 S.E.2d 800

**Carolyn Ann MAXEY, Plaintiff Below, Appellant,**

v.

**Teddy Curtis MAXEY, Defendant Below, Appellee.**

**No. 22107.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Nov. 17, 1995.

Richard E. Hardison, Harry G. Camper, Jr., Beckley, for Appellant.

C. Elton Byron, Jr., Abrams, Byron, Henderson & Richmond, Beckley, for Appellee.

PER CURIAM:

This divorce action between the appellant, Carolyn Ann Maxey, and the appellee, Teddy Curtis Maxey, is before this Court upon an appeal from the final order of the Circuit Court of Raleigh County, West Virginia, entered on April 5, 1993. The appellant contends in this appeal that the circuit court committed reversible error with regard to the distribution of the parties' marital assets. Those assets included United States Savings Bonds, stocks, a coin collection and a gun collection. For the reasons set forth below, the final order is affirmed, in part, and reversed, in part.

I

A review of the record reveals that this action has suffered a long and convoluted history and includes voluminous financial records and testimony. However, this appeal has been submitted to us without much assistance from counsel. No appellant brief has been filed, and the petition for appeal, excluding the cover page and the certificate of service, consists of two and one-half pages. Similarly, the appellee's brief consists of three and one-half pages. Regrettably, that part of the final order of concern is also somewhat cursory. This Court, therefore, must expiscate or "fish out" from the record the details and circumstances surrounding the respective assertions of the parties. As indicated above, this controversy is limited to four types of marital assets: (1) United States Savings Bonds, (2) stocks, (3) a coin collection and (4) a gun collection.

The parties were married in 1963 in Pearisburg, Virginia, and, later on, lived in the town of Mabscott, Raleigh County, West Virginia. During the marriage, the appellant worked for the United States Postal Service, and the appellee worked for the federal Mine Safety and Health Administration. The parties ultimately earned annual salaries of approximately $35,000 each. While married, the parties accumulated substantial amounts of real and personal property. The record indicates that the appellee exercised principal control of the assets during the marriage. The parties' only child is emancipated, and is not involved in this action.

The marriage deteriorated, and, in June 1985, the appellant and the appellee separated. In October 1985, the appellant filed a complaint for divorce on the ground of irreconcilable differences. W.Va.Code, 48-2-4(a)(10) [1981]. The action was decided by the circuit court and never referred to a family law master.

The subsequent delay in the resolution of this action is surprising, in view of the several matters which were not contested between the parties. No controversy arose between the parties concerning the receipt of their respective employment pension funds, and there was no controversy concerning the parties' motor vehicles or household furnishings. Neither party sought alimony, and no issues existed concerning children. In particular, the final order of April 5, 1993, lists ten parcels of real property acquired by the parties, worth $123,100 in total, and divides the same equally. The final order describes each parcel in detail and places a value upon each, all totalling $123,100. No issue is raised concerning the distribution of the real property.

The final order, however, is somewhat vague with regard to the assets in dispute, i.e., the United States Savings Bonds, the stocks, the coin collection and the gun collection. The only language found in the final order relevant to those matters states:

Inasmuch as the [appellee] has had access to the rents from the aforesaid real estate and to the coins, stocks and mutual funds acquired as marital assets, and has paid the taxes and insurance upon the said real estate, and has born the burden of the overseeing of such assets, his receipt of income from rent, fees or sale proceeds of and from such items shall be balanced off against his expenses and costs accrued by his possession and control of them, therefore neither party shall be entitled to, or receive any balance of any resulting payment in equitable distribution from the other.

## II

In this appeal, the appellant contends that the ruling of the circuit court, as reflected in the above language, constitutes reversible error. Specifically, the appellant asserts that, in contemplation of the parties' 1985 separation and until the time of the entry of the divorce order, the appellee wrongfully disposed of, hid and squandered the United States Savings Bonds, stocks and coin and gun collections, all of which were marital assets. The appellant asserts that the value of, or amounts realized, from those assets were not used by the appellee to pay the parties' expenses. The appellant contends that, therefore, the circuit court should have ordered the appellee to compensate the appellant for those assets.

The appellee, on the other hand, asserts that, after the parties were separated, certain bonds were redeemed and stocks were sold in order to maintain other assets of the parties and pay tax liabilities and joint obligations accumulated by the parties during their marriage. In particular, the appellee asserts that, during the period in question, he paid approximately $23,000 upon the joint obligations of the parties.

As this Court recently observed in *Hinerman v. Hinerman,* 194 W.Va. 256, 460 S.E.2d 71 (1995), the definitions of "marital property" and "separate property" are statutory and are found in *W.Va.Code,* 48–2–1 [1992]. As *W.Va.Code,* 48–2–1(e)(1) [1992], provides, "marital property" means all property and earnings "acquired by either spouse during a marriage ... real or personal, regardless of the form of ownership[.]" A similar definition appeared in an earlier version of *W.Va.Code,* 48–2–1, in effect during the period concerning this action. "Separate property" is not an issue herein. Provisions concerning the disposition of marital property are also statutory and are found in *W.Va. Code,* 48–2–32 [1984]. Those statutes were discussed by this Court in *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), syllabus point 1 of which states:

Equitable distribution under W.Va.Code, 48–2–1, *et seq.,* is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

*See also* syl. pt. 1, *Signorelli v. Signorelli,* 189 W.Va. 710, 434 S.E.2d 382 (1993); *Kapfer v. Kapfer,* 187 W.Va. 396, 400, 419 S.E.2d 464, 468 (1992); *Kimble v. Kimble,* 186 W.Va. 147, 150, 411 S.E.2d 472, 475 (1991); syl. pt. 2, *Hamstead v. Hamstead,* 184 W.Va. 272, 400 S.E.2d 280 (1990).

Pursuant to *W.Va.Code,* 48–2–32 [1984], a circuit court, in dividing marital property between the parties in a divorce action, may consider the extent to which each party, during the marriage, may have "conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties[.]" *See* syl. pt. 1, *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988), stating that a court may consider "conduct by either party that lessened the value of marital property." In any event, *W.Va.Code,* 48–2–32(f) [1984], provides:

In any order which divides or transfers the title to any property, determines the ownership or value of any property, designates the specific property to which any party is

entitled, or grants any monetary award, the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted.

■ As this Court stated in syllabus point 2 of *Whiting, supra:*

Unless the parties have made a joint stipulation or property settlement agreement, under Rule 52(a) of the West Virginia Rules of Civil Procedure the circuit court is required to make findings of fact and conclusions of law in its final order which reflect each step of the equitable distribution procedure. The same obligation is imposed upon a family law master under W.Va.Code, 48A–4–4(d).

■ Rule 52(a) provides that in actions "tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon[.]" Under Rule 52(a), findings of fact shall not be set aside unless clearly erroneous. *See also* syl. pt. 2, *Signorelli, supra;* syl. pt. 3, *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991); syl. pt. 2, *Somerville, supra.*

■ We recently described the nature of our review of equitable distribution orders in *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995). Although, in that case, we referred to the West Virginia family law master system, which is not involved in this action, we stated in syllabus point 1:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

■ In this action, the record demonstrates that from the time of the parties' separation in 1985 until the entry of the divorce order in 1993, the appellee engaged in numerous and substantial financial activities concerning the parties' marital assets, over which he had theretofore exercised control. The final order of April 5, 1993, however, makes no findings concerning sums of money the appellee may have received upon the redemption of the United States Savings Bonds or upon the sale of stocks, and the final order makes no reference to the $23,000 which the appellee states he paid upon joint obligations of the parties.

The lengthy period of time between the parties' separation and the divorce order makes an accounting of marital assets difficult. Numerous factual questions are left unresolved in this record, and the amounts of money relating thereto are not *de minimis.* For example, the record indicates that, based upon tax returns, the appellee received approximately $4,000 upon the redemption of savings bonds and realized a capital gain upon the sale of $34,000 worth of stock. The appellant, however, testified that she did not know what had happened to the parties' savings bonds, which she indicated were worth, in total, between $10,000 and $20,000. Furthermore, the appellant testified that she did not know what had happened to the parties' stock holdings. The appellee responded by indicating that he redeemed some of the savings bonds and stocks to meet the parties' joint obligations and expenses.

In particular, the expenses relating to the parties' real property, prior to the entry of the divorce order, remain unclear. Although the parties owed relatively little as to the purchase of the various parcels, the buildings and grounds pertaining thereto were largely of poor quality and, no doubt, generated expenses. Rents from all the real estate totalled approximately $300 per month. The appellant testified, however, that the appellee allowed the real property to deteriorate during the period in question. The final order does not resolve this matter.

Finally, the appellee indicated that much of the coin and gun collections had been stolen and, thus, were not available for distribution between the parties. The appellant, on the other hand, indicated that the loss from the theft was relatively minor. Although the final order mentions the coin collection, it makes no finding as to its value.

The final order does not mention the gun collection.

In view of the evidence and the assertions of the appellant concerning the United States Savings Bonds, the stocks and the coin and gun collections, all of which the parties do not dispute were marital assets, the circuit court committed error in failing to make more detailed findings. Such error is especially apparent in light of the substantial sums of money involved concerning those assets and because the issues relating to those assets were aggressively litigated by the parties. The final order of the Circuit Court of Raleigh County, entered on April 5, 1993, is, therefore, reversed, and this action is remanded to that court for proceedings consistent with this opinion, and, in particular, for findings concerning the United States Savings Bonds, the stocks, the coin collection and the gun collection. In all other respects, including the circuit court's distribution of the real property, the final order is affirmed.

Affirmed, in part, reversed, in part.

ALBRIGHT, J., did not participate.

MILLER, Retired J., sitting by temporary assignment.