**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Robert Hurley,**
**Appellant Below, Petitioner**

**vs.)  No. 21-0281** (Ohio County 19-D-154-MJO)

**Krystle Hurley,**
**Appellee Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert Hurley, by counsel Robert M. Williams, appeals the Circuit Court of Ohio County's March 11, 2021, order denying his petition for appeal and affirming the rulings made by the Family Court of Ohio County in the parties' divorce case. Respondent Krystle Hurley, by counsel David F. Cross, filed a response in support of the lower tribunals' orders and a supplemental appendix. In this appeal, petitioner argues that the family court erred in 1) ordering him to pay spousal support to respondent; 2) issuing a protective order to respondent against petitioner; 3) issuing a requirement that petitioner pay a portion of respondent's marital debt; and 4) finding that petitioner had engaged in cruel and inhuman treatment of respondent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2010, petitioner and respondent were married in Ohio County, West Virginia. After a period of separation, respondent filed a petition for divorce in September of 2019, alleging irreconcilable differences and, further, that petitioner had engaged in conduct or treatment of respondent which destroyed her mental or physical wellbeing, happiness, and welfare and rendered continued cohabitation with petitioner unendurable. Respondent further alleged that petitioner committed adultery during the course of the marriage—a claim that petitioner disputes.

1

The family court held a contested divorce hearing in December of 2020 in which petitioner, respondent, and petitioner's sister testified.[1] According to the circuit court's findings, respondent testified that petitioner engaged in several acts of belittling or degrading her throughout their marriage, including calling her derogatory names and making insulting comments about her appearance. Petitioner admitted at the hearing that he took nude photographs of respondent while she was incoherent without her knowledge and consent. Respondent testified concerning her past employment and expenses that she had incurred during the marriage. It appears from the record that respondent also testified as to her belief that petitioner attempted to "spike" a drink she was consuming on at least one occasion to poison or murder her and that he pushed her down a flight of stairs while they were residing in her parents' home. Petitioner also testified concerning his monthly expenses, property owned, and the marital debt. Under questioning, petitioner further admitted to taking funds that respondent held in her sole bank account after the parties had separated and using those funds for his own personal purposes.

After considering the evidence, the family court issued a final divorce order in January of 2021 which granted respondent spousal support and a protective order against petitioner. The order also required that petitioner pay a portion of respondent's marital debt and found that petitioner had engaged in cruel and inhuman treatment of respondent. In determining whether spousal support was appropriate, the family court noted that respondent was "currently employed with a monthly gross income of $3,000, which employment began in September of 2020." The family court also found that respondent was previously employed "for a period of 9 years prior to August of 2019," "had a gross income from her employment . . . of $58,075.00 per year" and that she had "two master's degrees; one in Business Administration and one in Accounting." However, the family court made findings that respondent "left her employment, and lost her income" because petitioner's "treatment . . . caused her a reduction in income, and shall be construed as part of the fault perpetrated" by petitioner.

Next, the family court noted that although respondent was entitled to a divorce from petitioner on grounds of cruel and inhuman treatment pursuant to West Virginia Code § 48-5-203, it stated that "[t]his finding does not include attempts to murder [respondent] for life insurance proceeds. [She] has not sufficiently proven that [petitioner] intended to murder her." The family court also concluded that there were irreconcilable differences between the parties. As to finances, the court noted that petitioner had used funds that the parties had in a joint checking and savings account, in addition to his admission to taking funds that respondent held in her sole bank account after the parties had separated and using those funds for his own personal purposes. Finally, the court concluded that three credit card debts were marital debt and that respondent had made payments towards those debts.

Based on testimony and evidence, the court further found that petitioner was responsible for paying all of the debts of the parties during the marriage, despite also finding that all the debts were marital and the same be equitably divided. However, based upon its finding of cruelty in the marriage that resulted in respondent's lost employment and wages, the court determined that part of the award of spousal support to respondent would be in the form of petitioner paying

---

[1]Petitioner did not include a transcript of this proceeding in the appendix record.

respondent's one half of the debt structure.[2] In rendering its findings, the court considered financial documents filed by the parties, the testimony of witnesses during the final contested divorce hearing, and law concerning the equitable division of marital property.

Thereafter, petitioner appealed the family court's order to the circuit court. In his petition for appeal, petitioner set forth ten grounds for relief, including that it was error to: order him to pay spousal support to respondent; require that he pay a portion of respondent's marital debt; and find that he engaged in cruel and inhuman treatment of respondent. On March 11, 2021, the circuit court entered an order denying the appeal. The circuit court concluded that "it is evident that [the family court judge] performed an exhaustive review and set forth an accurate rendition of the facts supporting her ruling. [The] judge also set forth extensive detail regarding the legal reasoning upon which she relied in rendering her determination." For those reasons, the circuit court concluded that petitioner's appeal lacked merit. This appeal followed.

This Court has explained the appropriate standard of review in these matters as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Further,

> "[q]uestions relating to [spousal support] . . . are within the sound discretion of the court and its action with respect to such matter[ ] will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

Syl. Pt. 2, *Mulugeta v. Misailidis*, 239 W. Va. 404, 801 S.E.2d 404 (2017). In the context of spousal support awards, this Court has provided the following direction in regard to abuse of discretion:

> An abuse of discretion occurs in three principal ways: (1) when a relevant factor that should have been given significant weight is not considered; (2) when all proper factors, and no improper ones, are considered, but the family [court] in weighing those factors commits a clear error of judgment; and (3) when the family [court] fails to exercise any discretion at all in issuing the order.

*Banker v. Banker*, 196 W. Va. 535, 548, 474 S.E.2d 465, 478 (1996).

On appeal, petitioner first argues that the family court erred in granting respondent spousal support. West Virginia Code § 48-6-301(b) requires that a court consider the following factors in making an award of spousal support: (1) the length of time the parties were married; (2) the period of time during the marriage when the parties actually lived together as husband and wife; (3) the

---

[2]Petitioner was also ordered to make direct monthly payments to respondent as spousal support.

present employment income and other recurring earnings of each party from any source; (4) the income-earning abilities of each of the parties; (5) the equitable distribution of marital property; (6) the ages and the physical, mental, and emotional condition of each party; (7) the educational qualifications of each party; (8) foregone or postponed economic, education, or employment opportunities of either party during the course of the marriage; (9) the standard of living established during the marriage; (10) the likelihood that the party seeking spousal support can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training; (11) any financial or other contribution made by either party to the education, training, vocational skills, career, or earning capacity of the other party; (12) the anticipated expense of obtaining the education and training described in West Virginia Code § 48-6-301(b)(10); (13) the costs of educating minor children; (14) the costs of providing health care for each of the parties and their minor children; (15) the tax consequences to each party; (16) the extent to which it would be inappropriate for a party, because that party will be the custodian of a minor child or children, to seek employment outside the home; (17) the financial need of each party; (18) the legal obligations of each party to support himself or herself and to support any other person; (19) costs and care associated with a minor or adult child's physical or mental disabilities; and (20) any other factors as the court determines necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support and separate maintenance.

According to petitioner, it was error to award spousal support because of respondent's education, past employment, and prior income, among other factors. However, the record reflects that the family court made extensive findings in regard to these issues in its final divorce order, which the circuit court then reviewed on appeal. Indeed, in the final divorce order, the family court found that respondent was "currently employed with a monthly gross income of $3,000, which employment began in September of 2020." The family court also noted that respondent was previously employed "for a period of 9 years prior to August of 2019," "had a gross income from her employment . . . of $58,075.00 per year" and that she had "two master's degrees; one in Business Administration and one in Accounting." The court further made findings about petitioner's education, his employment and annual income, and his expenses. However, the family court determined that respondent "left her employment, and lost her income" because of petitioner's "treatment[.]" Accordingly, petitioner "caused [respondent] a reduction in [her] income, and shall be construed as part of the fault perpetrated" by petitioner. As such, petitioner's argument that the lower courts did not consider this information is without merit. Further, to the extent that petitioner argues that the family court considered this evidence but did not properly weigh the same, we have previously held that the "trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997); *see also State v. Guthrie,* 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses *or weigh evidence* as that is the exclusive function and task of the trier of fact.") (emphasis added). Given the family court's findings, this Court cannot conclude, based upon the record before it, that the family court abused its discretion in granting respondent an award of spousal support.

Next, petitioner argues that the family court erred in granting respondent a divorce on the grounds of cruel and inhuman treatment in accordance with West Virginia Code § 48-5-203, and that respondent's testimony demonstrates "that she was less than truthful in her allegations." We find, however, that the family court did not abuse its discretion in granting respondent a divorce

on the ground of cruelty and inhuman treatment. West Virginia Code § 48-5-203(a)(3) provides, in pertinent part, that a divorce may be granted on the ground of cruel and inhuman conduct when the conduct at issue "destroys or tends to destroy the mental or physical well-being, happiness and welfare of the other and render continued cohabitation unsafe or unendurable." The family court found that petitioner engaged in several acts of belittling or degrading respondent throughout their marriage, including calling her derogatory names and making insulting comments about her appearance. Further, petitioner admitted that he took nude photographs of respondent while she was incoherent without her knowledge and consent. The family court concluded that this behavior constituted cruel or inhuman treatment, which met the requirements of § 48-5-203. Based on our review of the record, we find no reason to disturb these findings. *See Guthrie*, 194 W. Va. at 669 n.9, 461 S.E.2d at 175 n.9 (stating that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact"). While petitioner claims that there was no corroborating evidence for some of respondent's claims— including incidents involving a fall down the stairs and an attempted poisoning—the family court did not rely on these incidents when it ruled that petitioner had engaged in conduct that would constitute cruel or inhuman treatment. Indeed, the court specifically noted in its final divorce order that its finding of cruel and inhuman treatment did not include respondent's allegations that petitioner attempted to murder her, as she had "not sufficiently proven" that petitioner "intended to murder her." Accordingly, we find no error.

Next, petitioner argues that the circuit court erred in affirming the family court's order which granted a protective order to respondent. In support of this assignment of error, petitioner argues, without citation to the appendix record on appeal or to any supporting legal authority, that the family court's issuance of the protective order could wrongly lead to termination from his current employment. In addition to offering this argument without support, petitioner does not pinpoint anywhere in his brief that the circuit court was presented with the question before it was presented to this Court. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides, in part, that a petitioner's argument "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." This basic rule of practice serves a gatekeeping function for "[o]ur general rule . . . that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Shaffer v. Acme Limestone Co.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999). Because petitioner has failed to demonstrate that this nonjurisdictional question was presented to the circuit court, we decline to address the issue further in this appeal.

Finally, petitioner argues that the family court erred in ordering him to pay respondent's share of the marital debt. Petitioner contends that such a ruling was in clear violation of this Court's longstanding cases addressing the issue. In support of his claims, petitioner avers that the marital debt should have been equitably divided between the parties and cites *Maxey v. Maxey*, 195 W. Va. 158, 464 S.E.2d 800 (1995).

This Court has held that

"[e]quitable distribution under W.Va. Code, 48-2-1, et. seq., is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48-2-32." Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990).

*Maxey*, 195 W. Va. at 158, 464 S.E.2d at 800. Further, we have held that,

"[i]n the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code § 48-2-32(c) (1986)." Syllabus point 1, *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988).

Syl. Pt. 1, *Sellitti v. Sellitti*, 192 W. Va. 546, 453 S.E.2d 380 (1994).

Notwithstanding petitioner's argument to the contrary, the family court made extensive findings regarding the distribution of the marital estate, as set forth above, including that petitioner admitted to taking respondent's personal funds and converting the same for his own personal purposes. Further, based upon clear evidence that petitioner's conduct resulted in lost employment and wages for respondent, the court ordered petitioner to pay respondent's portion of the debt. Petitioner contends this ruling was in violation of *Maxey*, but he fails to address our holding in *Sellitti*. As set forth above, a court can adjust equitable distributions based on the "the effect of the marriage on the income-earning abilities of the parties." *Sellitti*, 192 W. Va. at 546, 453 S.E.2d at 380. We, therefore, conclude that petitioner failed to satisfy his burden of proof and find that the family court did not abuse its discretion in its division of marital property and debts.

Based upon the foregoing, we find no error in the circuit court's March 11, 2021, order, and we hereby affirm the same.

Affirmed.

**ISSUED:** August 31, 2022

**CONCURRED IN BY:**

6

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn