434 S.E.2d 382

**T. William SIGNORELLI, Plaintiff Below, Appellee,**

v.

**Deborah O. SIGNORELLI, Defendant Below, Appellant.**

No. 21455.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided July 16, 1993.

Parrish McKittrick, Parrish McKittrick &
Associates, St. Albans, for plaintiff.

Robin Jean Davis, Segal & Davis, L.C., Charleston, for defendant.

PER CURIAM:

This appeal is brought by Deborah O. Signorelli, the defendant below, from a final divorce decree entered in the Circuit Court of Kanawha County. The appellee, and plaintiff below, is T. William Signorelli. Mrs. Signorelli contends, *inter alia*, that the trial court erred in valuing a marital asset—a security service company operated by a closely held corporation owned entirely by the two parties. Mrs. Signorelli also argues that the trial court erred in determining the amount of child support and alimony Mr. Signorelli should pay.

Mr. and Mrs. Signorelli were married in 1978. They have two children—Anthony, born in 1981, and Christopher, born in 1984. The parties separated in June of 1988. Mr. Signorelli instituted these divorce proceedings on June 30, 1988. The parties agree that irreconcilable differences have arisen between them. The family law master and the trial court both found that the differences between the parties were unresolvable.

I.

*VALUATION OF SECURITY AMERICA*

■ In 1982, Mr. Signorelli founded Security America, Inc. The company provides basic security officer services and does business in both West Virginia and Tennessee. All shares of stock of Security America are owned by the two parties. We outlined our general procedure for determining equitable distribution in divorce cases in Syllabus Point 2 of *Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991):

" 'Equitable distribution under W.Va. Code, 48-2-1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va.Code, 48-2-32.' Syllabus

Point 1, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990)."

The parties agree that Security America is a marital asset. The major issue in this case concerns the valuation of the Security America stock and its division between the parties.

The record in this case shows that three experts offered their opinions to the family law master as to the value of Security America. Daniel Selby was hired by Mr. Signorelli and Michael Paterno was hired by the father of Mrs. Signorelli. Mr. Selby and Mr. Paterno entered into a joint stipulation valuing the Security America stock at $312,258. It is unclear whether Mr. Paterno and Mr. Selby were authorized to enter into a joint stipulation regarding the value of Security America. In any event, Mrs. Signorelli's father was unhappy with Mr. Paterno's valuation and sought the services of Daniel Simms. Mr. Simms concluded that the Security America stock was worth $996,579.

In Syllabus Point 3 of *Wood v. Wood*, *supra*, we noted that where no joint stipulation by the parties to a divorce is made, the trial court and family law master must make findings of fact and conclusions of law to support the valuation and distribution of marital assets:

" 'Unless the parties have made a joint stipulation or property settlement agreement, under Rule 52(a) of the West Virginia Rules of Civil Procedure the circuit court is required to make findings of fact and conclusions of law in its final order which reflect each step of the equitable distribution procedure. The same obligation is imposed upon a family law master under W.Va.Code, 48A-4-4(d).' Syllabus Point 2, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990)."

W.Va.Code, 48-2-32(d)(1) (1984), mandates that a trial court must, for valuation purposes, "[d]etermine the *net value* of all marital property of the parties as of the date of the commencement of the action or as of such later date determined by the court to be more appropriate for attaining an equitable result[.]" (Emphasis added). In Syllabus Point 4 of *Kimble v. Kimble*,

186 W.Va. 147, 411 S.E.2d 472 (1991), we elaborated on how the net value of a closely held corporation, such as Security America, should be determined:

. " 'The fair market value of a closely held corporation or other business is not necessarily equivalent to its 'net value' under W.Va.Code, 48–2–32(d)(1) (1984). Under this provision, the net value of a closely held corporation or business equals the net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value.' Syllabus Point 3, *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990)." [1]

Each of the experts offered extensive testimony to support their respective valuations of the Security America stock. The family law master and trial court accepted the joint valuation of Mr. Selby and Mr. Paterno over that of Mr. Simms, stating:

"[T]he evidence of [Mr. Signorelli] ... preponderate[s] over that of [Mrs. Signorelli] in the following respects:

1. Risk factors inherent in Security America;

2. Key man considerations;

3. Capitalization rate factor;

4. Stability of existing contracts;

5. Cooperation of Mr. Signorelli;

6. Operating expenses."

It would appear that several factors that were incorporated into the Selby–Paterno valuation were not considered by Mr. Simms. These factors were deemed by the family law master and accepted by the trial court to be notable components of their valuation. First, the business of Security America is essentially one of service, i.e., the supplying of security personnel. Sec-ond, this type of business is highly competitive and dependent on the ability to keep its customers' accounts. The contracts that the company has with the customers generally allows cancellation on thirty days' notice. Thus, the company's ability to continue to generate revenue is to some degree speculative which would diminish the value of the corporation.

The Selby–Paterno valuation also emphasized that in the absence of long-term customer contracts, the customer base is held together by Mr. Signorelli. The company has a very small managerial team and the customer base is essentially served by Mr. Signorelli. In this respect, he is the key person in the organization, thus discounting the value of the company to an outside purchaser.

It is clear that when reviewing the evidence offered by experts to show the value of marital assets, a family law master is accorded a "measure of discretion" when making such valuations; and this discretion applies when expert testimony conflicts. As we stated in Syllabus Point 5 of *Kimble, supra:*

" ' "A measure of discretion is accorded to a family law master in making value determinations after hearing expert testimony. However, the family law master is not free to reject competent expert testimony which has not been rebutted." This statement is analogous to the rule that "[w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review." Syllabus Point 1, in part, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984), *quoting* Syllabus Point 4, *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970).'

1. Syllabus Point 4 of *Kimble* must be read in concert with its Syllabus Points 2 and 3 which state:

"2. ' "The market value is the price at which a willing seller will sell and a willing buyer will buy any property, real or personal." Syllabus Point 3, *Estate of Aul v. Haden*, 154 W.Va. 484, 177 S.E.2d 142 (1970).' Sylla-bus Point 1, *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990).

"3. 'For purposes of equitable distribution, W.Va.Code, 48–2–32(d)(1) (1984), requires that a determination be made of the net value of the marital property of the parties.' Syllabus Point 2, *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990)."

Syllabus Point 1, *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990)."

The Selby–Paterno valuation accepted by the family law master and the trial court is based upon factors outlined in Internal Revenue Service Ruling 59–60.[2] In *Tankersley v. Tankersley*, 182 W.Va. 627, 630, 390 S.E.2d 826, 829 (1990), we specifically approved the use of the 59–60 factors when valuing closely held corporations, stating:

> "[V]aluing assets becomes more difficult when the asset is part of a more complex entity, such as an on-going business. Most courts also recognize that the valuation problems are more acute in closely held corporations, whose stock is not publicly traded. Courts have cautioned against inflexibility and have incorporated some or all of the factors utilized by the Internal Revenue Service in Revenue Ruling 59–60." (Citations and footnote omitted).

Despite approving the Selby–Paterno valuation, the family law master noted that the Internal Revenue Service recommends that a five-year period be utilized when applying Ruling 59–60, and in this case, Mr. Selby and Mr. Paterno utilized only the three-year period prior to the filing of this action in 1988. Therefore, the family law master decided to "adjust the results of

their approach to compensate for the use of fewer than the five (5) years or more contemplated by IRS Rule 59–60, and as advocated by [Mrs. Signorelli's] experts. The Law Master value[d] the Security American [s]tock, upon all the evidence, at ... ($350,000)." This decision resulted in an approximate $48,000 increase in the corporate value over that established by Messrs. Selby and Paterno.

The family law master accepted the evidence offered by Mr. Selby and Mr. Paterno because their valuation of the Security America stock included considerations not adequately accounted for in the valuation undertaken by Mr. Simms. The record contains extensive testimony by the experts including criticism of each other's valuation approach. We cannot say in light of the testimony heard by the family law master that there was a clear abuse of discretion in the family law master's ultimate decision on the stock valuation in this closely held corporation nor in the trial court's acceptance of the $350,000 figure.[3]

## II.

### OTHER MARITAL ASSETS

#### A.

 Mrs. Signorelli also argues that the value given to the marital domicile by the

---

**2.** In note 6 of *Tankersley v. Tankersley,* 182 W.Va. 627, 630, 390 S.E.2d 826, 829 (1990), we set out the eight factors contained in Internal Revenue Ruling 59–60 as follows:

> " '(a) The nature of the business and the history of the enterprise from its inception.
> " '(b) The economic outlook in general and the condition and outlook of the specific industry in particular.
> " '(c) The book value of the stock and the financial condition of the business.
> " '(d) The earning capacity of the company.
> " '(e) The dividend-paying capacity.
> " '(f) Whether or not the enterprise has goodwill or other intangible value.
> " '(g) Sales of the stock and the size of the block of stock to be valued.
> " '(h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.' "

**3.** We note that Mrs. Signorelli also argues that the family law master and the trial court should have considered and utilized the "binding offer"

made by her father, Mr. Orlandi, to purchase all shares, including those owned by Mrs. Signorelli, of the Security America stock for $750,000. Mr. Signorelli stated that he declined to sell his shares because the offer contained a very restrictive non-competition clause that precluded Mr. Signorelli from engaging in the security business for a period of six years and from a geographic area that included West Virginia and Tennessee and all states contiguous to them. The agreement also provided for 20 percent of the purchase price to be paid down and the balance to be payable over a period of years. All these factors would tend to reduce the present value of the $750,000 offer. Moreover, courts have recognized that opinions by interested parties to a divorce action as to the value of assets may be treated with some caution. *See, e.g., Weinstein v. Weinstein,* 18 Conn.App. 622, 561 A.2d 443 (1989); *Gulbranson v. Gulbranson,* 343 N.W.2d 715 (Minn.App.1984). We adopted a somewhat analogous view in *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990), with regard to the validity of a stock buy-sell agreement in a closely held corporation. We find no error on this point.

family law master, i.e., $80,000, is too high. Mrs. Signorelli was awarded the marital domicile as a portion of the marital property that she received. She argues that (1) the value of the property under the evidence should have been determined to be $67,500, the value of the home when purchased, and (2) $13,500 of the equity in the house was her separate property and not subject to equitable distribution. The evidence of record, however, shows the unrebutted testimony of Mr. Signorelli to the effect that the marital domicile had a value of $80,000 and that the $13,500 used as a down payment on the home was a gift by Mrs. Signorelli's father to *both* parties. Moreover, the home is titled in their joint names. We find no error on this point.

### B.

■ Mrs. Signorelli further asserts that she is entitled to compensation for earnings accumulated by virtue of (1) rent received for the building housing Security America, a marital asset, and (2) income from certain bank accounts under the control of Mr. Signorelli from the date of the commencement of the divorce proceedings through the entry of the final order by the trial court. We agree.

W.Va.Code, 55–8–13 (1923), clearly provides that one joint tenant may bring an action of account against another joint tenant if the other joint tenant has received more than his just share or proportion of their joint property. W.Va.Code, 55–8–13, states: "An action of account may be maintained ... by one joint tenant, tenant in common, or coparcener or his personal representative against the other, or against the personal representative of the other, for receiving more than his just share or proportion." Mr. Signorelli does not argue that Mrs. Signorelli is not entitled to one-half of the earnings accumulated from the marital assets between the time of the commencement of the divorce action and the filing of the final order.[4] However, neither the family law master nor the trial court addressed this issue; therefore, this case must be remanded for a factual determination of the net earnings from marital assets held by Mr. Signorelli to the exclusion of Mrs. Signorelli.

### C.

Mrs. Signorelli also asserts that the value of various bank accounts awarded to her for equitable distribution purposes was inaccurately calculated. This assertion is made baldly with no supporting citation to the record or documentation. As this case is being remanded, we do not foreclose Mrs. Signorelli from presenting to the trial court adequate proof to support her contention.

### III.

### *DISTRIBUTION OF MARITAL ASSETS*

The total market value of the marital assets as found by the family law master and approved by the trial court is $517,-473.14.[5] Thus, each party's distributed

---

4. In response to the foregoing error asserted by Mrs. Signorelli, Mr. Signorelli merely asserts that he, and not Mrs. Signorelli, is responsible for the operation of Security America. While that may be true, it has no bearing on the equitable distribution of rent from the marital property or earnings from the marital bank accounts.

5. The trial court's final order stated the market value of the marital property as follows:

"That an enumeration and market value of the marital property of the parties is as follows:

"1. Marital Residence, located at 115 McGovran Road, Kanawha City, Kanawha County, West Virginia; Market Value, Eighty Thousand Dollars ($80,000.00), and the indebtedness, Forty–Seven Thousand Three Hundred Thirteen Dollars ($47,313.00), and a net equity of Thirty–Two Thousand Six Hundred Eighty–Seven Dollars ($32,687.00);

"2. Office building and real estate located at 5407 MacCorkle Avenue, S.E., Kanawha City, Kanawha County, West Virginia; Market Value—One Hundred Sixty Five Thousand Dollars ($165,000.00); Indebtedness—One Hundred Two Thousand Six Hundred Sixty–Eight Dollars and Eighty–Six Cents ($102,-668.86); Net Equity of Sixty Two Thousand Three Hundred Thirty Dollars and Fourteen Cents ($62,330.14);

share would be $258,736.57. The amount awarded to Mrs. Signorelli included the marital home, all the bank accounts, the Mazda automobile, and the profit distribution of $34,532. These assets totaled $105,-143, that, when subtracted from the one-half distributable amount as applied to the stock in the company, equals $153,539.57. Corporate stock equal to $153,539.57 was required to be purchased by Mr. Signorelli over a ten-year period with interest of 8 percent per year on the unpaid balance.[6]

Both parties recognize that a trial court has discretion to order installment payments as part of the equitable distribution of marital property by virtue of W.Va. Code, 48–2–32(d)(7)(C), which states: "To make such equitable distribution, the court may: * * * (C) Direct either party to pay a sum of money to the other party in lieu of transferring specific property or an interest therein, if necessary to adjust the equities and rights of the parties, which sum may be paid in installments or otherwise, as the court may direct[.]" We analyzed a trial court's discretion to order installment payments where equitable distribution of substantial nonliquid assets is involved in Syllabus Points 5, 6, and 7 of *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990):

> "5. W.Va.Code, 48–2–32(d)(7)(A) through (E), contain a variety of options that are available to a trial court to provide for payment of a party's equitable distribution share in a divorce proceeding.

> "6. Where there are substantial nonliquid assets that are subject to equitable distribution, there may be no other recourse than for a trial court to order installment payments for a spouse's share.

> "7. Where the value of an equitable distribution asset is payable over a term of years, interest should be paid at the going rate in the absence of some special hardship factor shown by the obligor."

Mrs. Signorelli argues that she should have been awarded: (1) the office building housing Security America that has an equitable value of $62,330.14, and (2) the $94,-000 retained by Security America and used in calculating its value. She asserts that distribution of those assets to her would be more equitable than installment payments. In the alternative, Mrs. Signorelli argues that the ten-year installment payment period is too long and is inequitable because she would make a larger profit if she remained a shareholder in Security America and received yearly dividends.

■ Mr. Signorelli contends that the distribution of the office building to him was necessary to disentangle the parties' interests. Awarding the office building to Mrs. Signorelli would make her the landlord of Security America, a factor which could cause business disruptions in view of the parties' hostilities. He also argues that the $94,000 is necessary to the cash flow and expense payments of Security America.

| | BANK | ACCOUNT NUMBER | AMOUNT |
|---|---|---|---|
| " 3. | One Valley Bank | 09099672 | $ 2,000.00 |
| " 4. | One Valley Bank | 10000092965 | $ 5,200.00 |
| " 5. | One Valley Bank | 10000101827 | $ 6,000.00 |
| " 6. | Evergreen Federal Savings Bank | 1203463 | $ 1,500.00 |
| " 7. | One Valley Bank | 105691 | $ 3,513.00 |
| " 8. | Atlantic Financial | 1649429 | $ 6,211.00 |
| " 9. | 1988 Mazda 626 (Paid For) | | $ 13,500.00 |
| "10. | Stock—Security America, Inc. | | |
| | . . . | | $350,000.00 |
| "11. | Profit Distribution | | |
| | . . . | | $ 34,532.00 |
| | | | [+_____ |
| | "TOTAL | | $517,473.14] |

"Each party has and is awarded his and her own retirement accounts which are of equal value."

**6.** The remaining marital asset was the office building which housed the corporate business, the net value of which was set at $62,330.14.

This asset was given to Mr. Signorelli along with the remaining stock of the company which was valued at $196,406.43. This decision gave Mr. Signorelli total marital assets of $258,736.57, the same amount received by Mrs. Signorelli.

In *Bettinger v. Bettinger*, 183 W.Va. at 536, 396 S.E.2d at 717, we stated: "[I]t is advantageous to have the parties disentangle their equitable distribution obligations expeditiously, as we indicated in *Cross [v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987)]." We believe that the trial court properly awarded the office building to Mr. Signorelli in an effort to disentangle the parties' interests. Certainly, there was sufficient evidence of hostility demonstrated at the hearings to preclude us from finding this was an abuse of discretion. We also believe that the cash reserves used by Security America to cover cash flow and expenses of the corporation were properly considered nonliquid assets and included in the transfer of Security America to Mr. Signorelli. There was considerable expert testimony to that effect to support the order of the trial court. Moreover, the cash reserves were considered part of the overall valuation of the corporation and, as earlier noted, Mr. Signorelli received his wife's one-half share of the stock value.

With regard to the ten-year installment payout for Mrs. Signorelli's stock, we note that in *Bettinger* we did not attempt to set any formula for the length of time over which installment payments to equitably distribute "substantial nonliquid assets" should be made. The period in *Bettinger* was ten years, and we said that interest should be paid at the going rate of interest.[7] 183 W.Va. at 536, 396 S.E.2d at 717. Obviously, the length of time over which such installment payments should be made will vary according to the facts of the individual case. The obvious first step is to determine the reasonable ability of the purchaser to pay. Here, were it not for the fact that we are remanding for an increase in the amount of child support to be paid by Mr. Signorelli, as discussed in Part IV, *infra*, we would conclude that the payment over ten years, in view of his income and the corporate earnings, is too attenuated. We do not foreclose reconsideration of this issue on remand.

## IV.

### CHILD SUPPORT

It appears that the family law master found a gross salary of $120,000 per year for Mr. Signorelli. This figure was based on an annual salary of $42,900 from the corporation plus $2,987 of annual rent payable to Mr. Signorelli for the corporation's use of the building.[8] The final increment of salary found by the family law master was S-corporation income[9] from the corporation of $74,000. The family law master went on to find that Mr. Signorelli's net income would be approximately $90,000 per year. Out of this figure, a deduction was made for the $15,000 a year Mr. Signorelli was required to pay for Mrs. Signorelli's stock. The family law master then concluded that Mr. Signorelli "would have approximately Seventy–Five Thousand Dollars ($75,000.00) available for child support, or Six Thousand Two Hundred Fifty Dollars ($6,250.00) per month."

However, instead of finding the amount of child support based on this figure, the family law master stated that the income figure was uncertain, but gave no reason for this conclusion. Child support for the two minor children was then set at $1,800 per month, with Mr. Signorelli getting the dependency exemptions for state and federal income tax purposes. The trial court affirmed this finding.

---

**7.** We also stated in note 11 of *Bettinger*, 183 W.Va. at 536, 396 S.E.2d at 717:

"Courts have recognized that it may be appropriate in special circumstances not to award interest or to award it at a lower rate, for example, where the obligor has low income or other financial hardship. If this is done, however, the trial court is required to give its reasons. *E.g., Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Corliss v. Corliss*, 107 Wis.2d 338, 320 N.W.2d 219 (1982)."

**8.** The appellant asserts that the net monthly rental is $1,187.42. We are unable to conclusively verify this figure from the record nor for that matter the $2,987 annual rent payment used by the family law master.

**9.** An S-corporation is defined in Section 1361 of the Internal Revenue Code. A corporation which qualifies as an S-corporation is generally not taxed at the corporate level, but the income is passed through and taxed to its shareholders. *See generally* 33 Am.Jur.2d *Federal Taxation* ¶ 2025, *et seq.* at 911 (1993 ed.).

The trial court accepted the recommendation of the family law master that the child support guidelines not be utilized in this case, and that Mr. Signorelli be required to pay child support to Mrs. Signorelli in an amount lower than that mandated by the child support guidelines.[10] On this issue, we are guided by Syllabus Point 9 of *Bettinger, supra,* where we stated:

" 'When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va.Code,* 48A–2–8(a), as amended.' Syllabus, *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989)."

The trial court apparently accepted the master's recommendation of child support at the lower rate based on the master's conclusion that "[b]ased upon the incomes of the parties, and the uncertainties thereof, the Law Master recommends that the Child Support Formula should not be applicable in this case[.]" There were no facts given to support this conclusion. Certainly, the income of Mr. Signorelli was known. As we point out in the next section, to the extent that Mrs. Signorelli's total income played a role in the child support formula, it should have been ascertained. It is clear under Syllabus Point 9 of *Bettinger* that there was not a sufficient explanation to justify a departure from the child support formula.

Moreover, in Syllabus Point 12 of *Bettinger,* we pointed to the legislative preference for ensuring a standard of child support comparable to what children are accustomed prior to the divorce:

"A decision not to follow the SOLA percentages must be undertaken in light of the legislative preference in W.Va. Code, 48A–2–8(b) (1989), that child sup-

port should be keyed to 'the level of living such children would enjoy if they were living in a household with both parents present.' If the family law master or circuit court determines that SOLA percentages under 6 W.Va.C.S.R. § 78–16–2.7.2 should not be used, an explanation must be given."

For the foregoing reason, we reverse the child support award and remand the matter for further calculation in accordance with the principles set out in *Bettinger.*

## V.

### ALIMONY

The family law master recommended and the trial court ordered rehabilitative alimony paid to Mrs. Signorelli at the token rate of $1.00 per month for a three-year period. The reason more substantial rehabilitative alimony was not awarded was a result of Mrs. Signorelli's testimony that she would receive, in 1991, half of a trust created for her benefit. She testified that the trust contained several million dollars in assets. However, Mrs. Signorelli's counsel now argues that the trust amounted to much less than several million dollars and that more substantial permanent alimony should be awarded.

No evidence in regard to the actual value of the trust nor of its income-producing ability is in the record. Under W.Va.Code, 48–2–16(b)(3), one of the many factors given in determining both alimony and child support is the "present employment income and other recurring earnings of each party from any source." Upon remand, this information will need to be further developed so that a proper determination can be made as to Mrs. Signorelli's right to alimony.

## VI.

### CONCLUSION

Based upon the foregoing considerations, this case is affirmed, in part, reversed, in

---

10. W.Va.Code, 48A–2–8 (1989), mandates that the director of the child advocate office establish child support guidelines by legislative rule.

These guidelines are embodied in 6 W.Va.C.S.R. 78–16–1, *et seq.* (1988).

part, and remanded for further consideration.

Affirmed, in part, Reversed, in part, and Remanded.