469 S.E.2d 14

**Barbara Mae MICHAEL, Plaintiff
Below, Appellant**

v.

**Donald Hoover MICHAEL, Defendant
Below, Appellee.**

No. 23048.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 17, 1996.

Decided March 14, 1996.

---

William L. Frame, Wilson, Frame, Benninger & Metheny, Morgantown, for Appellant.

Russell M. Clawges, Jr., Furbee, Amos, Webb & Critchfield, Morgantown, for Appellee.

PER CURIAM.

In this divorce action, Barbara Mae Michael, the plaintiff below and appellant herein, appeals the December 30, 1994, equitable distribution order of the Circuit Court of Marion County. She contends the circuit court erred by discounting the market value of Michael Machine Company, Inc., a corporation owned primarily by the plaintiff and Donald Hoover Michael, the defendant below and appellee herein. She alleges the circuit court undervalued the corporation by at least $200,000. She also cites as error the distribution of other marital assets. Finally, the plaintiff argues the award of $400 per month alimony is insufficient and should be increased to $1,500 per month.

## I.

### FACTS

The parties were married in 1956. Two children were born of the marriage, both of whom are now emancipated adults. The plaintiff was a teacher with the Marion County Board of Education for more than thirty years. At the time of the final hearing before the family law master, she was making preparations for retirement.

In 1970, the defendant quit his job as a machinist to start the Michael Machine Company, Inc. (Michael Machine). The plaintiff contributed to the business by performing mostly clerical services. Over the years Michael Machine became a very lucrative business which enabled the parties to acquire over $2,000,000 in assets during the course of the marriage. The parties agree that the value of their 92 percent interest in Michael Machine is the largest marital asset.[1]

Two hearings were conducted before the family law master. The parties put forth evidence on the value of Michael Machine, in addition to evidence on the value of their real and personal property. At the conclusion of the evidence, the family law master prepared his recommendation dated November 28, 1994. The circuit court adopted the findings

and recommendations of the family law master. The plaintiff assigns as error the equitable distribution of portions of the marital estate as discussed below.

## II.

### DISCUSSION

#### A. *Standard of Review*

■ In Syllabus Point 1 of *Summers v. Summers,* 195 W.Va. 224, 465 S.E.2d 224 (1995), we articulated this Court's standard of review of a circuit court's equitable distribution order that adopts the findings of the family law master:

> " 'In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.' Syllabus Point 1, *Burnside v. Burnside,* [194] W.Va. [263], 460 S.E.2d 264 (1995)."

■ In this case, the circuit court relied upon the testimony of the defendant's expert in placing a fair market value on Michael Machine. For reasons discussed below, we decline to reverse that factual finding. However, we find the circuit court erred in considering the parties' Halflinger horses as the defendant's separate property when there was no evidence showing the horses were given to him as a gift. The classification of the horses as separate property is essentially a question of law which we review *de novo.*

■ In reviewing the issue of the alimony awarded to the plaintiff, this Court accords much deference to the circuit court's decision. Syllabus Point 3 of *Sellitti v. Sellitti,* 192 W.Va. 546, 453 S.E.2d 380 (1994), states:

> " ' " 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the

---

1. In addition to Michael Machine, the parties own certain real estate, livestock, investments, and other personal property that were divided by

court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus Point 2, *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987).' Syllabus Point 2, *Whittaker v. Whittaker*, 180 W.Va. 57, 375 S.E.2d 421 (1988)."

For the reasons discussed herein, we decline to disturb the circuit court's decision to award the plaintiff $400 per month alimony.

### B. *Michael Machine Company, Inc.*

■ The determination of the fair market value of the parties' 92 percent interest in Michael Machine was the major point of contention in the divorce proceeding. On appeal, the plaintiff asserts the interest in Michael Machine was undervalued by at least $200,000 by the circuit court. The plaintiff's expert witness, Sherry Cunningham, a certified public accountant, valued the stock of Michael Machine by using both the "Revenue Ruling 59–60" and "net book value" approaches. Using the Revenue Ruling 59–60 method, Mr. Cunningham considered the earnings of the company, the earnings retained by the defendant, and the risk factors associated with this type of business. *See generally, Signorelli v. Signorelli*, 189 W.Va. 710, 434 S.E.2d 382 (1993). When considering all the factors, Mr. Cunningham stated the fair market value of Michael Machine was $823,000. Accordingly, the marital interest in 92 percent of Michael Machine was valued at approximately $750,000. He stated that this finding is consistent with his calculation of the net book value of the corporation.

The defendant's expert witness was Barry Parks, a certified public accountant who had been the accountant for Michael Machine since it incorporated in 1978. Mr. Parks valued the business at $789,462 in book value. However, he testified that "it's a very unusual business to try to value" because the corporation invested in bank stock (currently Huntington Bank shares), and the "value of

the bank stock has become much greater than the value of the operating business." Furthermore, he stated that "a buyer would not buy this company to get the investment assets, unless they thought they could make money in the machine shop business." In placing a value on Michael Machine, Mr. Parks testified the book value of the corporation should be reduced by 30 percent on account of unmarketability of the business. He attributed this reduction to the fact that the machine shop business is so dependent upon the coal industry that the business is volatile and the company's profitability is due in large part to the efforts of the defendant. He testified that a 25 percent discount for this type of business is standard, but should the business be sold, the defendant would no longer be working with the business and it would lose the principal man involved in its operations.

The family law master and circuit court accepted Mr. Park's valuation of Michael Machine at $789,462, and reduced this figure by 25 percent to arrive at the fair market value of $592,096. The 30 percent discount recommended by Mr. Parks was not accepted because the evidence showed the defendant had not worked closely with the business over the past few years. Accordingly, the value of the marital portion of Michael Machine was placed at $544,729 ($592,096 × 92 percent).

The plaintiff contends that the 25 percent reduction of the market value of the business was an inappropriate reduction due to anticipated tax liability,[2] a practice we condemned in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990).[3] However, the defendant asserts the reduction did not go towards anticipated tax liability but rather towards the value of the assets in Michael Machine from the perspective of a willing buyer of the corporation. He argues that a purchaser would not pay full value for a corporate asset that could not possibly benefit the purchaser in that amount. In this regard, the defendant contends the effect of taxes goes not

---

the circuit court and are not at issue in this appeal.

2. The plaintiff argued that there should not have been any discount, because the company owned sizable Huntington Bank stock, which the plaintiff contended negated the necessity of discounting the market value of the company.

3. Syllabus Point 4 of *Bettinger* states: "The tax implications of a future sale of property to a third party are too speculative to allow for a tax deduction against the other spouse's share unless it can be ascertained under the court's decree that such sale will actually occur."

towards the reduction for tax liability, but instead to one of the factors considered in valuing the stock, the major asset of the business.

■ The plaintiff asserts the Huntington Bank stock is easily marketable. However, while the stock held by Michael Machine may have a fair market value exceeding $700,000, the corporation's basis in the stock is very low, approximately $100,000. Accordingly, a buyer interested in the stock alone would purchase the stock on the open market and not purchase Michael Machine, knowing that a conversion of the stock would raise serious capital gains liabilities.[4] Mr. Cunningham admitted he did not factor in the basis of the Huntington Bank shares stock in determining the market value of Michael Machine.

■ After reviewing all the evidence submitted regarding the fair market value of the marital interest in Michael Machine, we conclude the circuit court did not err by reducing the book value of the company. Both parties submitted credible expert testimony on the issue of the value of the business. We do not find the circuit court erred by accepting the findings of Mr. Parks over those of Mr. Cunningham, particularly since Mr. Parks had worked so closely with the business since 1978. In Syllabus Point 4 of *Signorelli, supra,* we stated:

" " " 'A measure of discretion is accorded to a family law master in making value determinations after hearing expert testimony. However, the family law master is not free to reject competent expert testimony which has not been rebutted.' This

statement is analogous to the rule that '[w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Syllabus Point 1, in part, *George v. Godby,* 174 W.Va. 313, 325 S.E.2d 102 (1984), *quoting* Syllabus Point 4, *Smith v. Godby,* 154 W.Va. 190, 174 S.E.2d 165 (1970)." Syllabus Point 1, *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990).' Syllabus Point 5, *Kimble v. Kimble,* 186 W.Va. 147, 411 S.E.2d 472 (1991)." Syllabus Point 4, *Signorelli v. Signorelli,* 189 W.Va. 710, 434 S.E.2d 382 (1993).

Therefore, we decline to disturb the circuit court's finding on the fair market value of Michael Machine.[5]

### C. *Halflinger Horses*

■ The plaintiff contends the circuit court erred in adopting the family law master's recommendation to award the parties' thirty Halflinger horses to the defendant as separate property. The parties agree the fair market value of the horses is $30,000. The circuit court found the horses were the defendant's "diversion and interest" and considered the horses as his separate property which were obtained by gift. The plaintiff argues the horses were a shared hobby and business investment and should have been classified as marital property.

The defendant responds that the record is clear the horses were his hobby and the

---

4. Upon liquidation of the stock by a purchaser of the corporation, the corporation would have to pay corporate income taxes, and any attempt by the corporation to transfer those earnings to the shareholders would result in income taxes to the shareholders. This Court has held that definite and readily ascertainable tax consequences may properly be considered in valuing property for equitable distribution purposes. *Hudson v. Hudson,* 184 W.Va. 202, 399 S.E.2d 913 (1990).

5. The parties agree there is one mistake in the equitable distribution order. Apparently the circuit court confused the Edward D. Jones account of approximately $28,000, held in the plaintiff's name, with a Merrill Lynch account of approximately the same value held in the name of Michael Machine. The circuit court listed Michael Machine as the owner of the Edward D. Jones

account, but failed to mention the Merrill Lynch account. Apparently, both accounts were marital property subject to equitable distribution. The plaintiff raises this error, but the mistake appears to be in her favor—should the error be corrected, she would have to share the Edward D. Jones account as marital property and the value of Michael Machine would not change. The Merrill Lynch account would simply be substituted for the Edward D. Jones account. Should this Court reverse and remand on this issue, any benefit would appear to be in the defendant's favor. However, in his brief the defendant notes this error and urges that no adjustment be made to the final order. Furthermore, the record is not entirely clear on this point. Accordingly, we decline to disturb the final order on this issue.

plaintiff had no interest in the horses. The defendant contends it was fair and equitable to consider the horses as separate property in the form of a gift as an offset to the determination that jewelry purchased for the plaintiff during the course of the marriage was her separate property.[6]

In *Roig v. Roig*, 178 W.Va. 781, 785, 364 S.E.2d 794, 798 (1987), this Court held that under W.Va.Code, 48–3–10 (1986), a spouse may transfer property to the other spouse by irrevocable gift and "remove the assets so transferred from inclusion in the marital estate." Our holding in *Roig* overruled previous case law which required the inclusion of gifts as marital property for purposes of equitable distribution.[7]

A review of the record does reflect that the defendant spent a lot of time caring for the horses. Nevertheless, apart from one stallion, there is no evidence whatsoever to support the conclusion that the horses, purchased with marital funds, were given to the defendant as gifts. The defendant failed to put forth evidence to meet his burden of proving the horses were in fact irrevocable gifts given by the plaintiff.[8] Therefore, the circuit court's decision to classify the horses as separate property was clearly erroneous and should be reversed. *Burnside, supra.*

We also find unconvincing the defendant's argument that the horses were classified as separate property to offset the value of jewelry given to the plaintiff. The circuit court identified the jewelry as separate property in the form of a gift. Clearly, the record evidence supports the finding that various items of jewelry purchased for the plaintiff with marital funds were intended as irrevocable gifts.

Accordingly, on the issue of gift, this case is reversed and remanded to the circuit court with directions to consider the horses as marital property and divide their value accordingly.

### D. *Alimony*

The plaintiff's final argument is that the award of $400 per month alimony is insufficient when considering the financial situation of the parties. She requests this Court increase the award to $1,500 per month. The evidence shows both parties are receiving income from certain investments. The plaintiff will receive approximately $1,500 per month in retirement benefits. The evidence is conflicting on the issue of whether the defendant will continue to receive wages from Michael Machine. In 1993, he earned approximately $67,000 from the corporation. The defendant contends he no longer receives a salary from Michael Machine because he is retired. The plaintiff argues the defendant's monthly income, including income from certain investments, exceeds $7,000, while her monthly income including alimony will be approximately $4,000 per month.

The defendant maintains the alimony award should not be set aside because the plaintiff can expect to receive nearly $4,000 per month (including alimony) without having to draw from the principal of the nearly $1,000,000 in real estate, stocks, and other investments. Should this Court decide to adjust the alimony award, the defendant requests we lower the award based on evidence showing that he retired due to his declining health. Therefore, he does not anticipate receiving income from Michael Machine any longer. Without this income, he argues the plaintiff's monthly income will exceed his within the next few years.

In reviewing an alimony award, we give substantial deference to the findings

---

6. The defendant values the jewelry at $75,000; the plaintiff values the jewelry at approximately $25,000.

7. Syllabus Point 4 of *Roig* states:

"Syllabus Point 2 of *Hamstead v. Hamstead*, [178] W.Va. [23], 357 S.E.2d 216 (1987), which says: 'Under *W.Va.Code*, 48–2–1(e)(1) [1986], property and earnings acquired by either spouse during a marriage, except property specifically excluded by *Code*, 48–2–1(f) [1986], is

"marital property" for purposes of equitable distribution at the time of divorce notwithstanding that the assets have been acquired by one spouse and "given" to the other,' is overruled. *W.Va.Code*, 48–3–10 [1984] implies that the word 'gift' in *Code*, 48–2–1(e)(1) [1986], includes gifts between spouses."

8. This Court stated in *Roig* that: "In all instances, the burden of proof is upon the spouse who would claim the gift." 178 W.Va. at 785, 364 S.E.2d at 798.

made by the circuit court and will reverse only when the court abuses its discretion. Syllabus Point 3, *Sellitti, supra.* After reviewing the record, we find no reason to disturb the circuit court's alimony determination in this case.

■ The decision to award the plaintiff alimony is supported by the evidence. *See* W.Va.Code, 48–2–16(b) (1984).[9] First, the plaintiff's monthly income is currently less than that of the defendant. W.Va.Code, 48–2–16(b)(3). There is no reason not to account for this disparity. Second, we should consider the longevity of the marriage. W.Va. Code, 48–2–16(b)(1). The parties were married for thirty-seven years and raised two sons. Finally, the defendant's adultery was the direct cause for the dissolution of the marriage. This Court has held that fault may be considered in determining what is "just and equitable" in awarding alimony even if the ground for divorce is irreconcilable differences under W.Va.Code, 48–2–4(a)(10) (1981).[10] *See also* W.Va.Code, 48–2–15(i) (1993).[11]

9. W.Va.Code, 48–2–16(b), states, in part:
"The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen [§§ 48–2–13 and 48–2–15] of this article, as a supplement to or in lieu of the separation agreement:
"(1) The length of time the parties were married;
"(2) The period of time during the marriage when the parties actually lived together as husband and wife;
"(3) The present employment income and other recurring earnings of each party from any source;
"(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;
"(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provision of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;
"(6) The ages and the physical, mental and emotional condition of each party;
"(7) The educational qualifications of each party;
"(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
"(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;
"(10) The costs of educating minor children;
"(11) The costs of providing health care for each of the parties and their minor children;
"(12) The tax consequences to each party;
"(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
"(14) The financial need of each party;
"(15) The legal obligations of each party to support himself or herself and to support any other person; and
"(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance."

10. Syllabus Point 2 of *Kinney v. Kinney*, 172 W.Va. 284, 304 S.E.2d 870 (1983), states:
" '*W.Va.Code*, 48–2–4(a)(10) [1977] which provides for a consensual divorce based upon irreconcilable differences allows the court to make a "just and equitable" award with regard to alimony, and since divorce on this ground is consensual, it is not necessary to find fault or inequitable conduct on the part of the spouse to be charged with an alimony award, although consideration may be given by the trial court to fault or inequitable conduct as one of many factors to be considered in determining what is "just and equitable." ' Syllabus, *Haynes v. Haynes*, 164 W.Va. 426, 264 S.E.2d 474 (1980)."

11. W.Va.Code, 48–2–15(i), provides:
"In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship. However, alimony shall not be awarded when both parties prove grounds for divorce and are denied a divorce, nor shall an award of alimony under the provisions of this section be ordered which directs the payment of alimony to a party determined to be at fault, when, as a grounds granting the divorce, such party is determined by the court:
"(1) To have committed adultery; or
"(2) To have been convicted for the commission of a crime which is a felony, subsequent to the marriage if such conviction has become final; or
"(3) To have actually abandoned or deserted his or her spouse for six months."

Based on all the foregoing evidence, we find the circuit court's decision to award the plaintiff alimony was substantially supported by the evidence. Furthermore, we decline to make an adjustment on the amount of the award because the evidence of the future earning potential of the defendant is so conflicting. The circuit court is the appropriate forum in which the parties should bring their claims for modification of alimony based on any alleged substantial change in their financial situations. *Louk v. Louk*, 184 W.Va. 164, 399 S.E.2d 875 (1990).

III.

CONCLUSION

For all the foregoing reasons, the equitable distribution order of the Circuit Court of Marion County is affirmed, in part, reversed, in part, and remanded with directions.

*Affirmed, in part, reversed, in part, and remanded with directions.*