490 S.E.2d 48

**Letitia Danette HUBER, Plaintiff Below, Appellant,**

v.

**James Patrick HUBER, Defendant Below, Appellee.**

**No. 23407.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided June 11, 1997.

John C. Skinner, Jr., Deborah B. Hillyard, Nichols & Skinner, L.C., Charles Town, for Appellant.

Paul E. Lane, Martinsburg, for Appellee.

DAVIS, Justice.

This is an appeal by Letitia Danette Huber, plaintiff/appellant, (hereinafter referred to as Ms. Huber) from a final order of the Circuit Court of Jefferson County. The final order adopted the recommendations of the family law master as to property distribution in the divorce action. Pursuant to the circuit court's order Ms. Huber was awarded 10% of the defendant/appellee's (hereinafter referred to as Mr. Huber) personal injury settlement for loss of consortium. Additionally, Ms. Huber was awarded $7,000 as her equitable distribution of lost wages stemming from Mr. Huber's personal injury award.

On appeal Ms. Huber contends that Mr. Huber failed to carry his burden of proof in establishing what, if any, portion of the settlement proceeds was nonmarital. Therefore, Ms. Huber argues that the circuit court should have deemed the entire settlement amount of approximately $475,000 as marital property.

## I.

### FACTUAL BACKGROUND

Mr. and Ms. Huber were granted a divorce, on the grounds of irreconcilable differences, by circuit court order dated September 23, 1991. The final divorce decree bifurcated certain property issues that were to be later resolved. On July 25, 1994, the family law master held a hearing to resolve the outstanding property issues. The property issue discussed herein relates solely to Mr. Huber's personal injury settlement.

Mr. Huber was seriously injured in an automobile accident on June 20, 1988. The parties were married and living together at the time of the accident. The accident left Mr. Huber in a coma for an unspecified period of time. It appears from the record that Mr. Huber was unable to return to his employment until approximately five months after the accident. Mr. Huber testified that as a result of the accident he was left with metal plates in parts of his body. Additionally, Mr. Huber lost use in 30% of his left arm. Mr. Huber retained counsel to represent him in his personal injury lawsuit against the responsible third party. Ultimately, Mr. Huber was able to settle his claim with the tortfeasor's insurance carrier without filing a civil action. The settlement resulted in a structured payout of approximately $475,000. Mr. Huber initially received a lump sum of $96,000. The remaining settlement balance is payable over a period of thirty years. The testimony revealed that from the initial lump sum payment, Mr. Huber gave to Ms. Huber the sum of $30,000.

During the family law master hearing, Ms. Huber argued that the personal injury settlement should be treated as marital property and therefore equally divided. The family law master ruled that the settlement money

was not marital property. The family law master recommended that Ms. Huber receive 10% of the settlement proceeds for her loss of consortium claim. Without any findings of fact or conclusions of law to support her recommendation, the family law master awarded to Ms. Huber the sum of $7,000 as one-half of Mr. Huber's lost wages.[1] After various other calculations and deductions which were unsupported by any findings of fact and conclusions of law, the family law master determined that Mr. Huber owed to Ms. Huber the additional sum of $9,500. The circuit court adopted the family law master's findings and conclusions by order entered October 13, 1995. This appeal followed.

## II.

## STANDARD OF REVIEW

■ Our analysis begins by setting forth the standard by which this Court reviews challenges to a circuit court's equitable distribution order. We set out that standard succinctly in syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

*See also* Syl. Pt. 2, *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451 (1995). It was noted by this Court in syllabus point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995) that "[a] circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the

application of law to the facts under an abuse of discretion standard." We explained in syllabus point 3 of *Stephen L.H.*, that "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences."

## III.

## DISCUSSION

### Distribution of Personal Injury Award

■ The sole question before this Court is whether Mr. Huber's personal injury settlement was properly classified as nonmarital property. We indicated in syllabus point 1 of *Signorelli v. Signorelli*, 189 W.Va. 710, 434 S.E.2d 382 (1993) that:

' "Equitable distribution under W.Va. Code, 48–2–1, et seq., is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va.Code, 48–2–32." Syllabus Point 1, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990).' Syllabus Point 2, *Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991).

Our review of the instant proceeding requires only that we analyze the first step of *Signorelli*, i.e., classification of property. In classifying property as separate or marital, the legislature has indicated a preference for classifying property as marital. In syllabus point 2 of *Kapfer v. Kapfer*, 187 W.Va. 396, 419 S.E.2d 464 (1992) we said that " 'W.Va.Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered

---

1. The family law master based her calculations on a total sum of $315,000; which properly reflected a deduction for attorney's fees from the settlement. The family law master determined that the 10% due Ms. Huber totaled $31,500 and that her share of lost wages was $7,000. The family law master apparently added $1,000 for

Ms. Huber, as reimbursement for one-half of a medical bill incurred on behalf of the parties' child. Therefore, Ms. Huber was entitled to the total sum of $39,500. However, the family law master deducted $30,000 that Mr. Huber previously gave to Ms. Huber. So, Mr. Huber's actual pay-out to Ms. Huber amounted to $9,500.

separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.' Syllabus Point 3, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990)." *See* Syl. Pt. 1, *Koontz v. Koontz*, 183 W.Va. 477, 396 S.E.2d 439 (1990).

In spite of the legislative preference for classifying property as marital, this Court has found some exceptions to the preference. One such exception is personal injury awards. This Court articulated in syllabus point 1 of *Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991) that, "[t]o the extent that its purpose is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate nonmarital property of an injured spouse." However, we also held that "economic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement." *Id.*, 186 W.Va. at 501, 413 S.E.2d at 156. Additionally we stated in syllabus point 4 of *Hardy* that "[a] loss of consortium claim is the separate nonmarital property of the uninjured spouse."

Ms. Huber contends that Mr. Huber failed to carry his burden of establishing what part of the settlement proceeds was nonmarital. Therefore, Ms. Huber asserts that the circuit court should have ruled the entire settlement amount was marital property. As authority, Ms. Huber cites the case of *Bandow v. Bandow*, 794 P.2d 1346 (Alaska 1990). Ms. Huber argues that *Bandow* places the entire burden on Mr. Huber to prove all settlement proceeds are nonmarital property. Ms. Huber has misread *Bandow* as requiring only one burden.

*Bandow* was a divorce case. The trial court ruled that the husband's medical malpractice settlement award was marital property. The trial court therefore awarded one-half of the entire settlement to the wife. The husband appealed. The Supreme Court of Alaska reversed the trial court's decision. The *Bandow* court ruled that both parties have a burden of proof when seeking to designate settlement proceeds as nonmarital and/or marital property.

Under the *Bandow* analysis the noninjured spouse claiming money from a tort action as loss of consortium, must prove the same by a preponderance of the evidence. The injured spouse must prove noneconomic losses and post-divorce economic losses by a preponderance of evidence. *Bandow* also stated that "to the extent that the parties do not provide sufficient evidence to make a reasonable allocation to a separate estate, the award should be classified as marital property." *Id.*, 794 P.2d at 1350. *See also Freeman v. Freeman*, 107 N.C.App. 644, 421 S.E.2d 623 (1992) (allocating a dual burden); *Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738 (1988) (utilizing a dual burden of proof).

We believe that *Bandow's* approach to dividing, in a divorce proceeding, monies from a settlement or verdict award is sound and fair. We believe that the *Bandow* analysis is consistent with our general analysis set forth in *Hardy*. In this Court's decision in *Hardy* we stated in syllabus point 3 that "[t]he burden of proving the purpose of part or all of a personal injury recovery is on the party seeking a nonmarital classification." We believe that *Bandow* provides a more concise meaning of what was intended in syllabus point 3 of *Hardy*. Therefore, we hold that in a divorce proceeding a noninjured spouse who claims money from a tort settlement or verdict award as loss of consortium,[2] must prove the same by a preponder-

---

**2.** We indicated the following regarding loss of consortium in *Poling v. Motorists Mut. Ins. Co.*, 192 W.Va. 46, 49, 450 S.E.2d 635, 638 (1994):

Consortium is a right, arising from the marital union, to have performance by a spouse of all the duties and obligations assumed by the marriage relationship, including the right to society, companionship and services. At common law 'consortium' was defined as consisting of (1) services, (2) society and (3) sexual relations, and the husband was entitled to recover damages from a tortfeasor when one or more of these elements of the relationship with his wife were lost or impaired due to an injury to her. W.Va.Code, 48–3–19a [1969] states that '[a] married woman may sue and recover for loss of consortium to the same extent and in all cases as a married man.' Therefore, either spouse may be entitled to consortium

ance of the evidence.[3] If the noninjured spouse carries his or her burden, the amount of monies designated as loss of consortium shall be the separate, nonmarital property of the noninjured spouse. The injured spouse who claims money for noneconomic loss [4] and post-divorce economic loss [5] must prove the same by a preponderance of evidence.[6] If the injured spouse carries his or her burden, the amount of monies designated for noneconomic loss and post-divorce economic loss shall be the separate, nonmarital property of the injured spouse. To the extent that the

parties do not provide sufficient evidence to make an allocation of all of the tort settlement or verdict award under their respective burdens, such balance shall be classified as marital property and divided accordingly.[7]

In the case *sub judice* the family law master imposed the burden of proof only on Mr. Huber, even though the decision in *Hardy* clearly provides that a loss of consortium claim is the separate nonmarital property of the noninjured spouse—and therefore must be proven by the noninjured spouse.[8] While we make explicit today the dual bur-

---

damages if the other is injured by a tortfeasor. (Citations omitted.)

3. Any claim for loss of consortium covers only the period from the date of injury to the date the divorce complaint was filed. This Court has generally held "that marital property is to be valued at the date of the divorce complaint or at such later date as determined by the court to be more appropriate." *Hillberry v. Hillberry*, 195 W.Va. 600, 607, 466 S.E.2d 451, 458 (1995). See also *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990); *McGraw v. McGraw*, 186 W.Va. 113, 411 S.E.2d 256 (1991).

4. Noneconomic loss includes pain, suffering, disability, disfigurement, or other debilitation of the mind or body of the injured spouse. See *Robinson v. Charleston Area Medical Center, Inc.*, 186 W.Va. 720, 725, 414 S.E.2d 877, 882 (1991) ("A 'noneconomic loss' is defined as 'losses including, but not limited to, pain, suffering, mental anguish and grief.' ") (quoting W.Va.Code § 55–7B–2(g) (1986)). Where a tort settlement or verdict award expressly sets out an amount for noneconomic losses, then proper evidence of the same is conclusive proof on the issue.

5. Post-divorce economic loss is nothing more than what is generally called "future damages." We stated in syllabus point 2 of *Adkins v. Foster*, 187 W.Va. 730, 421 S.E.2d 271 (1992) that " ' "[f]uture damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses." Syllabus Point 10, *Jordan v. Bero*, [158] W.Va. [28,] 210 S.E.2d 618 (1974).' Syl. Pt. 2, *Flannery v. United States*, 171 W.Va. 27, 297 S.E.2d 433 (1982)." *See* Syl. Pt. 2, *Liston v. University of West Virginia Bd. of Trustees on Behalf of West Virginia University*, 190 W.Va. 410, 438 S.E.2d 590 (1993) ("Where a plaintiff wishes to quantify the loss of earning capacity by placing a monetary value on it, there must be established through expert testimony the existence of a permanent injury, its vocational effect on the plain-

tiff's work capacity, and an economic calculation of the monetary loss over the plaintiff's work-life expectancy reduced to a present day value."); *Reed v. Wimmer*, 195 W.Va. 199, 209–210, 465 S.E.2d 199, 209–210 (1995) (" 'To warrant a recovery for future medical expenses, the proper measure of damages is not simply the expenses or liability which shall or may be incurred in the future but it is, rather, the reasonable value of medical services as will probably be necessarily incurred by reason of the permanent effects of a party's injuries.' ") (quoting Syl. Pt. 15, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974)). Post-divorce economic loss includes those factors we have traditionally recognized under future damages. Where a tort settlement or verdict award expressly sets out an amount for future damages, then proper evidence of the same is conclusive proof on the issue of post-divorce economic loss.

6. The type of evidence the noninjured spouse may proffer to challenge an amount sought for noneconomic loss and post-divorce economic loss includes evidence of: loss of consortium, lost wages, pre-divorce payments for the injury, and any prior agreement between the parties on the issue. This list of rebuttal type evidence is meant only to provide guidance and is not exclusive.

7. All calculations under this dual burden are made after deducting attorney fees and expenses.

8. The family law master found that the evidence revealed $14,000 as lost wages which diminished the marital property. To compensate for the wage loss the family law master awarded Ms. Huber $7,000 as her share of the lost wages. Next, the family law master determined that Ms. Huber was entitled to compensation for loss of consortium. It was determined that 10% of the settlement (after deducting attorney's fees) should be assigned for loss of consortium. The family law master provided no analysis as to how or why a 10% formula was chosen.

den in such cases,[9] *Hardy* implicitly recognized this point. The dual burden method is a more analytical approach[10] and has been adopted in a number of equitable distribution states. This analytical approach is consistent with the policy behind West Virginia's equitable distribution statute and provides a procedure by which the assets and debts of the marital estate must be established by well recognized procedural and evidentiary rules as opposed to mere guesswork. This Court clearly stated in *Pearson v. Pearson*, 200 W.Va. 139, 146, 488 S.E.2d 414, 421 (1997) that

> Evidence presented in a divorce case must be consistent with our Rules of Civil Procedure, Rules of Evidence and Rules of Practice and Procedure for Family Law. A divorce proceeding is not an opportunity for lawyers to circumvent our procedural and evidentiary rules. Those rules are applicable in divorce actions with the same force and vibrancy as in any other civil proceeding.

▇▇▇ For Ms. Huber to prevail in a loss of consortium claim and the same be awarded as her separate nonmarital property, it is incumbent on Ms. Huber to present appropriate evidence to support her loss of consortium claim. Such evidence can be reasonably presented by vocational experts, economists and accountants.[11] In fact, most of the evidence that this Court has outlined

would have been secured by the personal injury lawyer in preparation for the personal injury trial. As such, in most instances, the categorization of damages would also be available as a result of the personal injury case.

▇▇▇ A final order must provide a factual and legal basis by which this Court can facilitate meaningful review. In this case the lower courts failed to make sufficient findings on the respective burdens of both parties. We therefore reverse the circuit court's ruling on the personal injury settlement.

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's ruling on the distribution of Mr. Huber's personal injury settlement award is reversed and this case is remanded for a proper determination consistent with this opinion.

Reversed and Remanded.

9. Regardless of the type of damages, economic or non-economic, if there is a tort settlement or verdict award expressly identifying the type of damages then proper evidence of the same is conclusive proof on the issue.

10. For states adopting the analytical approach, *see Crocker v. Crocker*, 824 P.2d 1117 (Okla. 1991); *In re Marriage of Smith*, 817 P.2d 641 (Colo.Ct.App.1991); *Kirk v. Kirk*, 577 A.2d 976 (R.I.1990); *Pauley v. Pauley*, 771 S.W.2d 105 (Mo.Ct.App.1989); *Weisfeld v. Weisfeld*, 545 So.2d 1341 (Fla.1989); *Lentini v. Lentini*, 236 N.J.Super. 233, 565 A.2d 701 (App.Div.1989); *Dees v. Dees*, 259 Ga. 177, 377 S.E.2d 845 (1989); *Cummings v. Cummings*, 540 A.2d 778 (Me. 1988); *Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1987); *Miller v. Miller*, 739 P.2d 163 (Alaska 1987); and *Freeman v. Freeman*, 107 N.C.App. 644, 421 S.E.2d 623 (1992).

11. The type of evidence that will aid in establishing a reasonable amount for loss of consortium

include: length of marriage; evidence that the parties were actually living together at the time of the injury; the length of time that the injured party was actually unable to perform the duties and responsibilities in the home that were customary for the spouse to perform; the nature of each duty or responsibility that the party was unable to perform; and the extent to which the injury had an impact in helping bring about the dissolution of the marriage. The list of loss of consortium factors is not exclusive. The nature of the evidence an injured spouse may proffer to challenge an amount sought for a loss of consortium claim includes evidence of: noneconomic loss, post-divorce economic loss, pre-divorce medical payments for the injury, lost wages, and any prior agreement between the parties on the issue. This list of rebuttal type evidence is also not exclusive and is meant only as a guide. Where a tort settlement or verdict award expressly sets out an amount for loss of consortium, then proper evidence of the same is conclusive proof on the issue.